## DOWNING & CO. *v.* UNITED STATES (No. 188)·.[1]

ADDITIONAL DUTY ON EXCESS GOODS, WHEN NOT ALLOWED.

An American concern with a London branch closed that branch and directed that such supplies as had been forwarded from this country and not consumed should be returned to the United States. Some goods of English manufacture were included in the consignment made up to be returned, but these last were not declared at the home port of entry, apparently through ignorance or mistake, for there is no imputation of fraud. The English goods were fairly to be treated as excess goods and not subject to an.additional duty over and above that to which they would have been subject if regularly imported.—United States *v.* Leeming (153 Fed. Rep., 489), distinguished.

### United States Court of Customs Appeals, November 22, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6957 (T. D. 30207).

[Reversed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The Franco-American Food Co., a corporation doing business in the United States, established a branch office in the city of London, England, and forwarded to the London establishment certain cooking utensils and, from time to time, advertising matter and office supplies of American origin. The company finally decided to close its London office and directed its agent in charge to return to the United States all supplies which had been received from the parent house and not consumed. By reason of this order the agent shipped to the United States 139 cases of goods. One hundred and thirty-five of these cases were covered by the sworn declaration of the shipper that they were of American origin, valued at £15, which declaration was accompanied by a "yellow certificate" from the American consul to the same effect. On arrival the importation was entered on the shipper's declaration and consular certificate, which constituted a special form of invoice used only for returned American goods. Having before them no documents other than the declaration, consular certificate, and bill of lading, the importers naturally described the importation in their entry as 139 cases of printed matter and cooking utensils of American origin, valued at £15. To the entry was attached the oath of the president of the company that all the articles were of American manufacture. After entry, 9 of the 139 cases were sent for examination to the public stores, where it was discovered that a part of the importation was of English, and not of American, origin. This brought about an investigation, as a result of which it was ascertained, with the aid of the Franco-American Co., that English goods, appraised at £25 10s. 9d., had been included in the shipment, and that the total value of the American goods shipped was £159. In accordance with reg-

---

ulations, the collector reported the case to the Treasury Department, which instructed him to lay the matter before the United States attorney, and if that officer was of the opinion that the presumption of fraud arising from the facts could be rebutted, to release the merchandise upon payment of additional duty. As, subsequent to these directions, the collector treated the excess importation as an honest mistake and did not seize the goods or proceed against the importer, as prescribed by law in cases of attempted fraud, it is evident that he was advised that the presumption of fraud could be rebutted. Following the instructions, he admitted the American goods free and assessed the goods of English origin not only for the usual duties, but for the additional duty prescribed for undervaluation by section 32 of the act of July 24, 1897, the material parts of which are as follows:

SEC. 32. * * * If the appraised value of any article of merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry, but the additional duties shall only apply to the particular article or articles in each invoice that are so undervalued and shall be limited to fifty per centum of the appraised value of such article or articles. Such additional duties shall not be construed to be penal, and shall not be remitted, nor payment thereof in any way avoided, except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback: *Provided*, That if the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice which are undervalued: *Provided further*, That all additional duties, penalties, or forfeitures applicable to merchandise entered by a duly certified invoice, shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice, and no forfeiture or disability of any kind, incurred under the provisions of this section shall be remitted or mitigated by the Secretary of the Treasury. The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value.

The importer protested against the assessment of additional duties and claimed that the English merchandise should be treated as excess goods omitted from the invoice and as prescribed in articles 1045 and 1046 of the Customs Regulations, which are as follows:

ART. 1045. *Omission from invoice.*—If a package be found by the appraisers to contain any article not specified in the invoice, and they shall be of opinion that such article was omitted with fraudulent intent, the contents of the entire package will be liable to seizure and forfeiture. But when, in the opinion of the appraisers, no fraudulent intent is apparent, the value of the excess will be added to the entry and duties paid accordingly.

ART. 1046. *Excess of merchandise.*—Increased duty only is incurred by a simple excess of quantity over the quantity expressed in the invoice; but where the value of the goods as declared in the entry is less than the appraised value thereof, both increased and additional duties accrue upon the quantity of like goods found in excess of that specified in the entry.

The Board of General Appraisers was apparently of the opinion that the objection of the importers was well taken; but, considering that it was bound by the decision in United States *v.* Leeming (153 Fed. Rep., 489), the protest was overruled, and the importers appealed

The decision in this case turns on the construction which should be given to section 7 of the act of June 10, 1890, as amended by section 32 of the tariff act of July 24, 1897. In terms that section provides that "if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value *declared in the entry*, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty * * * but the additional duties shall only apply to the *particular article or articles in each invoice that are so undervalued.*"

It is admitted by the Government that the declaration of the shipper and the consular certificate thereto attached constituted the special invoice required for returned goods of American origin and that the entry of the importer was made thereon.

This case may be considered from the point of view, first, that the invoice, entry, and valuation of the goods presented by the importer to the collector covered by their terms only American goods and that therefore the British goods were not invoiced, entered, or valued at all by the importer; second, that the invoicing, entry, and valuation as American goods of what were really British goods was in effect the invoicing, entry, and valuation of British goods.

If the invoice, entry, and valuation of the goods covered only the American goods, then it appears to us clear that the imposition of additional duties can not be sustained. Under the language of the statute, to justify the imposition of additional duties, it would seem that there must be, first, a value declared in the entry; second, that that value must be applicable to some particular article set out in the invoice; and, third, that it must be below the appraised value. If no value for goods of English origin was declared in the entry and no English goods whatever were included in the invoice, it would seem that their subjection to additional duties was not authorized, especially as the law itself provides that additional duties shall apply only to *the particular article or articles in each invoice that are so undervalued.* As the American goods were not subject to any duty at all, additional duties could not of course attach to them, however much they might exceed either the entered or invoice value. On a literal interpretation of the statute and on the assumption that there was no entry, invoice, or valuation of British goods, we think it plain that the British goods must be considered merely as excess goods and not

·subject to additional duties. The only question that remains to be considered is whether this court would be justified in giving to the provision under consideration a more comprehensive meaning than its language actually imports. Can we say that although the lawmaker did not employ words apt to the purpose he truly intended that additional duties should be exacted on goods neither entered nor invoiced nor valued by the importer? We think not.

The language of the enactment appears to be clear, definite, and certain. Under such circumstances, to expand the provision and inject into it words not used by the legislator would not be warranted, and still less warranted, if that be possible, when it is considered that the additional duty clause is on its face a punitive measure. In certain contingencies, in order to give effect to the actual intent of the legislature, it is true that the language of a law may be broadened or restricted by the courts. So far as we are aware, it has never been held, however, that that power can be so exercised as to penalize an act or omission the punishable nature of which has not been formally and legislatively announced. On the theory that the invoice, entry, and valuation of American printed matter did not cover printed matter of British origin, the exaction of duties in addition to the usual duties would have to be sustained, if sustained at all, not because the importer undervalued an invoiced article, but because articles were imported which were neither entered, valued, nor invoiced. Failure to properly enter and invoice imported goods is not covered by section 32 but by other provisions of customs laws designed to meet just such cases and to prevent evasion of duties and frauds on the revenues which such a failure might facilitate. Section 9 of the act of June 10, 1890, provides for the case of a false entry based on a false invoice, and if the collector believed that a false entry based on a false invoice had been made within the meaning of that section he should have proceeded as therein directed. If he did not so regard it, there still remained section 2901 of the Revised Statutes which covered the situation exactly and defined precisely what should be done. This section reads as follows:

2901. The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined, and appraised, and shall order the package so designated to the public stores for examination; and if any package be found by the appraisers to contain any article not specified in the invoice, and they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner, or agent, the contents of the entire package in which the article may be, shall be liable to seizure and forfeiture on conviction thereof before any court of competent jurisdiction; but, if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid accordingly, and the same shall be delivered to the importer, agent, or consignee. Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended.

If therefore in this case packages *were* found to contain articles not specified in the invoice, it became the duty of the appraisers to determine whether such articles were omitted with fraudulent intent. If they so determined, the contents of the entire package became liable to seizure. If, on the other hand, the appraisers were of the opinion that the omission was made without any intention of evading duties or defrauding the revenues, the excess became subject to the usual duties only and on payment thereof the importer was entitled to delivery of the importation.

If we consider the case from the second point of view and regard the printed matter of British origin as covered by the invoice, entry, and valuation of American printed matter, there seems to be no escape from the conclusion that such printed matter was more than covered by the valuation of £15 and was therefore not subject to the penalty for undervaluation.

From the customs records it appears that a list identifying by number each case to be shipped and specifying its contents was made out on September 16, 1908, by A. W. Randall, the shipper in London. On September 17, 1908, the list was presented to the consul general at London, who attached to it his yellow certificate, in which the merchandise was described as printed matter valued at £15, although the list clearly disclosed that the cases contained not only printed matter but cooking utensils and other articles as well. Four cases, marked 1a to 4a, which were actually shipped to the United States and entered, were not mentioned in Randall's list and were therefore not invoiced at all. These four cases and case No. 126 contained the following goods, which on investigation were found to be British and which were not referred to in any way in the invoice:

| Articles. | Found in case No.— | Value. |
|---|---|---|
| | | £ s. d. |
| Picture frames | 126 | 2 12 0 |
| 39,000 order blanks | 1a and 2a | 7 6 3 |
| 4,500 addressed envelopes, printed | 2a and 3a | 1 13 9 |
| 2,000 unaddressed envelopes | 3a | 9 6 |
| 5,500 stock-on-hand sheets | 3a | 2 2 8 |
| 23,400 printed envelopes | 4a | 5 11 2 |
| 1,700 statements, printed matter | 4a | 1 5 6 |
| 82 index cards | 4a | 1 3 |
| Total | | 21 2 1 |

The following were the goods which were invoiced as American goods, but which the investigation disclosed to be British goods:

| Articles. | Found in case No.— | Value. |
|---|---|---|
| | | £ s. d. |
| 1,200 invoice envelopes | 127 | 8 8 |
| 4,000 unstamped postcards | 129 | 2 12 0 |
| 1,400 large envelopes | 129 | 1 8 0 |
| Total | | 4 8 8 |

From this it is evident that the only British goods which could be considered as invoiced were appraised by the appraiser at only £4 8s. 8d., which was more than covered by the £15 valuation, if that sum can be considered as a valuation of the British goods claimed to be invoiced. If it can not be considered as a valuation of British goods, then there was no valuation whatever of British goods made by the importer and therefore no undervaluation. It is true that the entry made by the importer on September 28, 1908, covered the full number of 139 cases and stated that the value thereof was £15, but it is equally true that that valuation of £15 can not be made to apply to any particular article or articles claimed to be undervalued. As additional duties are by the express terms of the statute applicable only "to the particular articles or articles in each invoice that was so undervalued," it seems evident that no additional duties should have been imposed.

The case of United States *v.* Leeming (153 Fed. Rep., 489), cited by the Government, dealt with excess goods identical with the goods actually entered, invoiced, and valued by the importer. The facts of that case substantially differed, therefore, from those of this appeal, and we must decline to accept it as decisive of the issue here, especially as we are not wholly in accord with its reasoning, although not at all prepared to say that the conclusion reached was incorrect.

The decision of the Board of General Appraisers is *reversed*.