VANDEGRIFT & Co. *v.* UNITED STATES (No. 2310).[1]

1. VALUE.
   The Treasury Department's instruction to customs officials (T. D. 37442) to refuse "entries of no commercial value," for the reason that, in contemplation of law, all imported merchandise has some value, is in consonance with the tariff act of 1913.

2. DURESS.
   Where entries of "no commercial value" were rejected by the collector, entries then made stating the value are not made under duress.

3. APPRAISED LESS THAN ENTERED VALUE.
   Where, under the tariff act of 1913, the final appraised value was less than the entered value, the collector only obeyed the injunction of paragraph I, Section III, not to assess on less than the entered value, when he rejected the appraisement and liquidated on the basis of the entered value.

4. PARAGRAPH I, SECTION III, TARIFF ACT OF 1913—DEDUCTIONS FROM INVOICE VALUE.
   The permission of paragraph I, Section III, tariff act of 1913, to deduct from invoice value to make market value can not be construed to authorize the deduction of the whole value.

[1] T. D. 40231.

5. SAMPLES OF CLOTH.

    Books of samples of woolen cloth, intended to be used as samples and then thrown away, were entered on an invoice stating the value of the cloth before being cut up, and its value as rags after being cut up. Entry was made as of the cloth value and the whole value deducted to make commercial value. The entries were rejected and remade stating the cloth value. Final appraisement was of the rag value. The collector liquidated on the basis of the entered value, and assessed the samples as woolen cloth under paragraph 288, tariff act of 1913. The decision of the Board of United States General Appraisers overruling a protest claiming duress, liquidation on the basis of the appraised value, and classification as rags under free list paragraph 586, as wool waste under paragraph 651, or as waste not specially provided for under paragraph 384, is affirmed.

United States Court of Customs Appeals, May 27, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8659 (T. D. 39675).

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *William H. Futrell,* special attorneys, of counsel), for the United States.

[Oral argument April 10, 1924, by Mr. Tompkins and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

    HATFIELD, Judge, delivered the opinion of the court:

    The merchandise involved in this appeal consists of samples of woolen cloth imported in book form. The samples are used for the purpose of selling goods of which they are representative in color, texture, and design; and, when so used and the purpose to which they were dedicated has been consummated, they are thrown away.

    The appeal involves entry 1304, consisting of 3,400 bunches of samples invoiced on form "not purchased by the importer," at £630 10 0; the invoice also contained the following statement:

    The above amount is the cost of the cloth in the bunches which have no commercial value except as rags, such value being £96.

    In its entry 1304 of this merchandise the importer made the following statement:

| | |
|---|---|
| 4 bales of woolen cloth cut into samples of no commercial value | £633 18 9 |
| Less nondutiable charges | £ 3 8 9 |
| | £630 10 0 |
| Importer deducts to make market value | £630 10 0 |
| | £ 0 0 0 |

    The record also discloses the following statement of the importer, which fully defines its position:

    In accordance with the authority granted in paragraph I of Section III of the tariff act of October 3, 1913, which permits the importer to make deductions

rom the cost or value in the invoice as in his opinion may lower the value to the actual market value, we deduct to make the market value as follows:

Invoice dutiable value_____ £630 10 0
Cut samples about 6 inches square of no commercial value.
Therefore deduct_____ £630 10 0
                                                                        _____
Entered value_____ £  0  0 0

The value set forth in the within invoice is not the value of this merchandise in the condition as imported but the value of other merchandise, viz, woolen cloth in the piece which is not the subject of this importation.

The value has been destroyed by cutting the cloth into small pieces which makes it useless for any commercial purpose.

The original cost of the cloth, represented by these samples, is over $3,000, and is part of the overhead expenses in selling the cloth, and therefore is added to form part of the market value of the cloth imported or to be imported. We are entering by the same steamer a shipment from the same consignee, containing the cloth represented by these samples, the value of which is $9,000, on which we are paying 35% duty. If duty is assessed on the within-mentioned samples, it is equivalent to assessing a double duty.

Entry 6105, also involved in this appeal, consisted of 3,000 bunches of samples of woolen cloth, invoiced on form, "not purchased by the importer," at £473 10 0, and written thereon was the additional statement of value of the merchandise as rags, in the sum of £70, in language identical with that, excepting the amount, contained in entry 1304, which has been quoted, supra; this entry contained a deduction of the entire invoiced value, to make market value, for the reason, as stated, that it had no commercial value.

Both entries were refused by the collector on the authority of T. D. 37442, which is a letter containing instructions from the Treasury Department of the Government to the collector of customs at Philadelphia, Pa., directing customs officials to refuse "entries of no commercial value," for the reason that in contemplation of law all imported merchandise has some value.

The importer thereupon entered the merchandise at the higher values, less 20 per cent each, contained in the respective invoices.

Entries were not made in accordance with the provisions of subsection 4, paragraph J, section 4, which provides in part that—

* * * samples solely for use in taking orders for merchandise, * * * may be admitted without the payment of duty under bond for their exportation within six months from the date of importation. * * *

The appraiser appraised the merchandise at the respective entered values.

The importer appealed to reappraisement.

The final reappraised value of the merchandise included in entry 1304 was found to be £96, and the final reappraised value of the merchandise included in entry 6105 was found to be £70.

The collector assessed the merchandise for duty upon the entered value at 35 per cent under paragraph 288 of the tariff act of 1913, the pertinent part of which reads as follows:

PAR. 288. Cloths, knit fabrics, felts not woven, and all manufactures of every description made, by any process, wholly or in chief value of wool, not specially provided for in this section, 35 per centum ad valorem.. * * *

In the protest filed by the importer to the collector's classification and assessment, it was claimed that the collector should have liquidated the entries in accordance with the final reappraised values, and not on the basis of the entered values; that the action of the collector in refusing to accept the entries as originally filed was without authority in law; and that the entries filed by the importer and accepted by the collector were made and filed under duress.

It was further claimed that the merchandise should have been admitted free of duty as rags under paragraph 586 of the act of 1913, or as wool waste under paragraph 651, or that it was dutiable at 10 per centum ad valorem under paragraph 384 as waste not specially provided for.

The Board of General Appraisers overruled the protest.

The claim of the importer that the refusal of the collector to accept the original entries of "no commercial value" amounts to duress is not well founded, and is not substantiated, we think, by the authorities cited and relied upon by the appellant.

The original entries were refused by the collector solely because of the fact that the importer deducted the invoice prices in their entirety in order to make market value, on the ground that the merchandise had no commercial value.

Paragraph I of Section III of the tariff act of 1913, in so far as the same is pertinent to this case, reads as follows:

PAR. I. That the owner, consignee, or agent of any imported merchandise may, at the time when he shall make entry of such merchandise, but not after either the invoice or the merchandise has come under the observation of the appraiser, make such addition in the entry to or such deduction from the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise or lower the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; and the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: * * * *Provided,*

That if the appraised value of any merchandise shall exceed the value declared in the entry by more than 75 per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. * * * The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

This paragraph permits the importer on entry of imported merchandise to make such additions to or deductions from the *cost* or *value* given in the invoice as in his opinion may raise or lower the same to the actual market value or wholesale price of such merchandise at the time of exportation of the same to the United States.

The paragraph does not include within its terms merchandise that is valueless; it clearly incorporates the premise that all merchandise is of some value.

Cost incorporates the idea that something of value was given to procure the article.

Value means the worth or desirability of an article as compared with something else also desirable, usually with the medium of exchange.

The importer may add to or deduct from the cost or value given in the invoice in order to raise or lower such *cost* or *value* to the market *value* or wholesale *price* of such merchandise at the time of exportation.

The paragraph extends to the importer the privilege of making such additions or deductions as will prevent the payment of excess or additional duties. It extends no greater privileges than those included within the plain meaning of the language contained in the paragraph.

If imported merchandise actually has no market value and no wholesale price in the country from which it was exported the importer's rights and privileges extended to it under and by virtue of the quoted provisions of paragraph I, supra, do not apply as to such importation. The privileges granted by legislative authority may not be extended by an importer nor by the officials of the Government in order to meet the unusual and peculiar conditions attending imported merchandise or the importation thereof.

It is perfectly apparent that if the provisions of paragraph I, supra, may be extended by the importer so as to permit entry of merchandise at "no commercial value," no additional duties as provided in paragraph I, supra, can be levied, even though upon appraisement and reappraisement the final value should be legally ascertained to be of a considerable amount, as it is an arithmetical impossibility to compute—

* * * an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry—

as there is no basis upon which to make the computation.

It would be impossible to give effect to that provision in paragraph I, supra, which reads as follows:

* * * That if the appraised value of any merchandise shall exceed the value declared in the entry by more than 75 per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence * * *—

as there would be no basis upon which to make the computation.

The paragraph should be construed as a whole, in order to give effect, if possible, to all of the provisions contained therein.

The importer may not extend the rights and privileges granted to it in one provision of the paragraph beyond the plain and ordinary meaning of its terms, and by so doing relieve itself of the obligations and responsibilities placed upon it by another equally plain provision contained therein.

We are unable to find in the tariff act of 1913 any provision for an entry of merchandise "of no commercial value;" on the contrary, its every provision seems to refer, where any reference at all is had, to merchandise of at least some value.

It may be said therefore that, in contemplation of law, all imported merchandise has some value.

There being no authority in law for entries of no commercial value and the importer not being within its legal rights in thus entering its merchandise, it, of course, follows that the collector was legally justified in refusing to accept such entries.

It does not appear that the importer was required by the customs officials to do anything more than to state some value in its respective entries. It was not required to make any admission in its entries which it deemed imprudent and unwise, nor was it required to exclude from its entries any statement or declaration which it considered proper to make.

The importer was not constrained by duress to enter its merchandise at the values stated in the respective entries; it was at liberty to state the values later ascertained in reappraisement proceedings to be the proper values, or other values may have been stated, as in the opinion of the importer were proper.

We think that this case is distinguishable from the cases cited by the importer as authority for its contention.

In the case of Stein v. United States (1 Ct. Cust. Appls. 36; T. D. 31007) this court held that, when an importer is constrained to include in his entry a nondutiable item, in this case a 2½ per cent commission, by the knowledge gained from the Customs Regulations, that the omission of the item would be followed by the exaction of a penalty, the inclusion thereof is made by duress.

In the case of Stein v. United States (1 Ct. Cust. Appls. 478; T. D. 31525) the doctrine announced in the case of Stein v. United States, supra, was reaffirmed. In this case the question of an involuntary inclusion in the entry of a commission paid by the importer was under consideration by the court.

In the case of Batten & Co. v. United States (5 Ct. Cust. Appls. 447; T. D. 34975) the question involved was whether the collector's action amounted to duress in refusing an entry unless the importer used language substantially as follows: "Add 2½ per cent to make market value," in the place of the following declaration contained in the entry: "Add 2½ per cent commission." This court held that an entry made and filed in accordance with such official interference was not the voluntary act of the importer in a matter in which he was entitled to exercise discretion and judgment.

The 2½ per cent commission, however, having been determined to be a dutiable item, relief was denied the importers for the reason that they had not been deprived of substantial rights and privileges.

In the case of Vandiver v. United States (6 Ct. Cust. Appls. 80; T. D. 35329) substantially the same questions were involved as in the "Stein" and "Batten" cases, supra, and we think that those cases are clearly distinguishable from the case under consideration.

No substantial right or lawful privilege has been denied the importer. It has merely been prevented by proper official action from exercising a privilege not extended to it by law, which, if not denied, would have nullified other provisions of the law of great importance to the Government of the United States.

The action of the collector in liquidating the entries on the basis of the entered values was in accordance with the provisions of paragraph I, supra; he had no other course than to obey the plain mandate of the law.

We think that the merchandise was properly classified and assessed by the collector under paragraph 288, supra, at 35 per cent ad valorem.

The samples were manufactured for a definite purpose, and were fully dedicated to the use, at the time of importation, of aiding in the sale of merchandise of which they were representative.

The record in the case clearly establishes that the merchandise is not "waste," and that it is not used as "rags" and not dutiable as such.

The judgment of the Board of General Appraisers is *affirmed*.