PROCTOR Co. *v.* UNITED STATES (No. 2401).[1]

1. ESTOPPEL—EXTRA OFFICIAL INFORMATION.

Where importer's agent asked an examiner for information as to the foreign market value of imported merchandise, and the examiner, misunderstanding the inquiry, misinformed him, the resulting undervaluation in the entry is not thereby excused.

[1] T. D. 40735.

2. UNDERVALUATION—"NOT FOUND" MERCHANDISE.

   Upon an invoice showing the merchandise to be colored Botany yarn, entry was made as of the foreign market value of white Botany yarn, the value of the white being lower than that of the colored. Upon arrival the goods were appraised and the white yarn reported "not found." Additional duty was properly assessed under paragraph I, Section III, tariff act of 1913, for undervaluation.

### United States Court of Customs Appeals, March 6, 1925

APPEAL from Board of United States General Appraisers, G. A. 8754 (T. D. 40055)

[Affirmed.]

*Waterhouse & Lockett* for appellant.

, *William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument Jan. 15, 1925, by Mr. Lockett and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges; BARBER, Associate Judge, participating in the decision by agreement of counsel

BLAND, Judge, delivered the opinion of the court:

The appellant, a firm of customhouse brokers, entered at the port of Boston, in behalf of Haddon, Talbot & Smeeton, of Boston, three lots of Botany yarns. The three importations were identical and were all shipped by the firm of James Tankard (Ltd.) of Bradford, England. Upon receipt of the consular invoices and before arrival of the shipments, an employee of the appellant took the invoices to the office of the local United States appraiser and submitted them to an examiner for the purpose of ascertaining the foreign market value on the date of exportation of the yarns. It is claimed that the market was fluctuating.

All of the invoices described the merchandise as Botany yarn. While there might be a difference of opinion, we think there is little doubt that the values and information set out on the invoices might indicate the color of the yarn. Botany yarn is ordinarily described on invoices as white Botany yarn, colored Botany yarn, or mixed Botany yarn. White Botany yarn has a lower value than colored or mixed Botany yarn.

Evidently the examiner assumed that the appellant's agent desired information as to the market value of white Botany yarn, and he furnished him with this information. Appellant then entered the goods at this value. The examiner, when the merchandise arrived, made a return on the invoice "merchandise invoiced not found," and appraised the yarn as colored yarn and duty was assessed accordingly.

Later, upon departmental investigation, additional duty was assessed under the provisions of paragraph I of section 3 of the act of

October 3, 1913, and liquidation was made, including additional duties.

Appellant protested the assessment of the duty, and the three protests are quite similar.  Protest 956949–11687 is as follows:

We hereby protest against your assessment of duty on entry #993, ex the S. S. *Winifredian*, August 10, 1921, and liquidated May 5th, 1922.

We claim that your assessment of duty is incorrect inasmuch as the merchandise in question was reported as excess merchandise by the appraiser, also by your office, and, therefore, we should not be assessed a penal duty on excess merchandise.

We entered this shipment as White Botany Yarn, but it outturned as mixture, an entirely different commodity.  The shipper had made a mistake in the invoicing, as prior and subsequent shipments were properly described as mixtures.

Your office advised us under date of August 19, 1921, that the examiner had added a certain amount for the merchandise not expressed on the invoice, and, therefore, in accordance with previous decisions of the Board of General Appraisers, more especially T. D. 37987, we should not be assessed a penal duty on merchandise in excess.

We pay the amount demanded under duress and solely to obtain possession of the merchandise.  Demand for the merchandise is hereby made.

The report of the collector is as follows:

The claims of the importers are set forth in the inclosed protests.

Protests 1164 and 11687 are against the classification of the merchandise. Protests 11687, 11688, and 11689 are against the assessment of additional duty under Par. I, Section III of the Act of October 3, 1913.

I inclose herewith the special reports of the Appraiser relative to the classification of the merchandise.  The Appraiser states that "The merchandise subject of protests consists of Botany yarn, entered and returned for duty at the rate of 18% ad valorem under Par. 287 of the Tariff Act of 1913, plus 45 cents per pound under Par. 19 of the Emergency Tariff, which latter assessment is objected to by the protestants.  In the opinion of this office the yarn is manufactured from wool of a kind provided for in paragraph 18 of the Emergency Tariff, and is therefore dutiable as reported.

Additional duties under Par. I, Section III of the Act of October 3, 1913, were assessed in liquidation in accordance with instructions from the Department.

I inclose herewith copies of the correspondence between this office and the Department.

The Appraiser reports no samples retained.

The evidence of the importer tended to prove that, where the words "Botany yarn" are used, they ordinarily mean white Botany yarn; and that, if the yarn is colored or mixed, the invoice will so state.  We think it is clear that nothing the examiner could have said would have been binding, in the subsequent proceedings, in determining the value of the merchandise and in the discharge of official duty.  The act of the examiner in giving information was not in compliance with any statutory duty and can not be relied upon by the importer to excuse or explain away the undervaluation which we think existed.—John H. Roth & Co. *v.* United States (40 Treas. Dec., p. 428; Abstract 44384).

Since the importation was made under the tariff act of 1913, and not under the tariff act of 1922, there is no provision for a remission of additional duties except for manifest clerical error. It is not contended that there is manifest clerical error in this case, nor that there is any right to a remission of the additional duties under the remission of duty provisions of either law.

Even if the importer had asked the examiner what the market value was of colored Botany yarn and misinformation had been given him innocently, we do not think it would afford the importer any relief. It is our view that the importer must have known, or could have known, what kind of goods were ordered, what kind of goods were shipped, and the kind of goods that were entered. He entered Botany yarn at one price. It proved to be Botany yarn and was assessed for value at a higher, correct price.

True, the examiner reported that white Botany yarn was not found and the goods that were found were colored Botany yarns. It is contended by the importer that he at no time had the opportunity to appeal to reappraisement or file an application with the Secretary of the Treasury for remission, for the reason that the goods invoiced were, by the appraising officials, declared not found and that no notices of any advancement were sent to the importer. Since an appeal to reappraisement and a petition for remission would have availed the importer nothing, his complaint is not appealing. But, in any event, he is certainly responsible for the condition in which he finds himself.

Since it is not clerical error and since the goods were Botany yarn and were undervalued, we know of nothing under the law that could have been done other than what was done. In our judgment it is a case of undervaluation, and additional duties were properly assessed, and the board properly overruled the protest to the assessment and the liquidation of the entry.—Fougera & Co. v. United States (9 Ct. Cust. Appls. 296; T. D. 38237); United States v. Thomas Leeming (153 Fed. 489); Herazy v. United States, T. D. 25645 (8 Treas. Dec. 383); Kuttroff, Pickhardt & Co. (Inc.) T. D. 37987 (36 Treas. Dec. 351); Max Meyer v. United States, Abstract 42585 (35 Treas. Dec. 360).

Appellant relies chiefly upon the case of Downing v. United States (2 Ct. Cust. Appls. 278; T. D. 32033). In this case a corporation doing business in the United States, with a branch office in London, sent to London, from time to time, cooking utensils, advertising matter, and office supplies of American origin. The company closed the London office and directed the foreign agent to return to the United States all supplies received. Upon entry, oath was made that all articles were of American manufacture. After entry it was discovered that a few cases of the merchandise were of English

origin. The court held that the invoiced goods were excess goods; that they were not undervalued and that no additional duties attached.

It is clear that the Downing case, supra, has no bearing on the facts at hand. There the goods were free if of American origin. The assessment of additional duty would have been a difficult proposition if they had been declared dutiable. The goods were not entered, invoiced, or valued by the importer. If in appraisement the goods had been given a value, how could the collector have determined how much the appraised value exceeded the entered value when they were entered as free? See Vandegrift & Co. *v.* United States (12 Ct. Cust. Appls. 230; T. D. 40231). In the case at hand, Botany yarn was invoiced, entered, and valued, but undervalued. The other cases cited, where they bear upon the facts at hand at all, tend to support the position of the appellee.

The protest by the importer would seem to us to be an attempt by indirection to procure remission of additional duties, because of alleged error which was not manifest clerical error. The board had no jurisdiction in such matters under the act of 1913.—Brown & Co. *v.* United States (12 Ct. Cust. Appls. 93; T. D. 40026).

The judgment of the Board of General Appraisers is *affirmed.*