UNITED STATES v. NORTH AMERICAN MERCANTILE CO. (No. 2699)[1]

REMISSION—NATURE OF PROOF.
It is incumbent upon a petitioner for remission of additional duty imposed for undervaluation under section 489, Tariff Act of 1922, to establish by satisfactory evidence that he was acting in absolute good faith and making a full and candid disclosure of all the material facts in his possession bearing upon the value. The judgment of the board on such petition will be affirmed unless clearly contrary to the weight of the evidence. Where petitioner was an experienced importer of the goods at bar and knew that its market was stable, his entry on a consular invoice at less than half of its usual price and the price he had agreed to pay for it, having in his possession at the time a private invoice showing the true value, was inexcusable.

United States Court of Customs Appeals, May 1, 1926

APPEAL from Board of United States General Appraisers, Abstract 50233

[Reversed.]

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.
*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellee.

[Oral argument April 1, 1926, by Mr. Charles D. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:
The appellee filed his petition in the court below for remission of additional duties under section 489 of the Tariff Act of 1922. The Board of General Appraisers, after a hearing, granted the prayer of said petition. The Government appeals.

But one witness, M. Uno, in charge of the purchases and shipments of the importer, testified on the hearing below. He stated in substance that the goods imported which were advanced by the appraiser were two cases of agar-agar, and that the remainder of the goods imported were not so advanced. He further stated that he obtained the consular invoice from the Yokohama Specie Bank and took it to Hoyt, Shepston & Sciaroni, brokers, and told them to make the entry at the prices shown in said invoice; that at that time he had in his office, in his possession, a private invoice giving the correct valuation of the goods imported. His reasons for not comparing the two invoices are as follows:

Q. Just tell us about what you did and why you did it, when you made the entry.—A. We had not enough time to compare with the Japanese invoice, the consular invoice.
Q. Were you in a hurry? Just say yes or no.—A. Yes.
Q. Why?—A. Because close to general order.

1 T. D. 41578.

Q. You mean by that, if you did not make the entry right away the merchandise would be placed in general order?—A. Yes.

\*        \*        \*        \*        \*        \*        \*

Q. You say you did not have time to go and get it?—A. No; I did not mind about it.

\*        \*        \*        \*        \*        \*        \*

Q. At the time that you had the entry made, did you know there was an error on the consular invoice?—A. When I had the entry made?

Q. Yes.—A. No; I did not.

He further stated that he did not know of the mistake until about a week afterwards, when Mr. Devine, an examiner, came to his store, advised him of the error, looked at importer's private invoice, and then caused the agar-agar to be appraised as shown by the same. He further stated that he had imported continually in considerable quantities, that the price always remained about the same, and that he always received a private invoice which he used for purposes of comparison with the consular invoice.

It is shown by the consular invoice that the goods involved were two cases of agar-agar of 16 pounds each, valued at 24 *yen* each. They were entered as 32 pounds of agar-agar at a value of 53 *yen*, there being apportioned to the agar-agar its proportionate part of the cost of packing, namely, 5 *yen*. The appraiser advanced the values 101.07 per centum.

The court below having found the issues for the petitioner, its judgment ought not to be disturbed unless it is clearly contrary to the weight of the evidence. *Fish* v. *United States*, 12 Ct. Cust. Appls. 307. The weight, however, usually attached to the finding of a trial court because of the opportunity such a court has of hearing the witnesses testify, is here lacking. It appears from the record that the testimony was heard by General Appraiser Brown and the decision made and judgment entered by a majority of Board 2, with whom General Appraiser Brown was not sitting.

It was incumbent upon the petitioner to establish by satisfactory evidence that in undervaluing his goods in his entry he was acting in absolute good faith, and that he was there making a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported. *Syndicate Trading Co.* v. *United States*, 13 Ct. Cust. Appls. 409, T. D. 41339; *Glendenning, McLeish & Co.* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320; *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220.

We are of opinion an inspection of the record fails to show the exercise of such good faith in making his entry as the law requires. He was an experienced importer of agar-agar; he knew its ordinary value and that such value changed but little from time to time. He was fully cognizant of the contents of the consular invoice, for he caused to be affixed thereto a certificate showing an advance upon

other items to meet similar advances by the appraiser in other cases. He also took the packing charges, stated in gross in the invoice, and prorated them in the entry. Hence he or his broker must have observed that the invoice values for agar-agar were less than half their usual values and less than half what he had agreed to pay therefor.

In addition he had then in his office an invoice showing the correct values. He says he did not look at this because he was in a hurry, to avoid having his goods sent to general order. As shown by the entry, his goods arrived at port March 17, and the entry was made March 18, 1925. Under the law, they could not be sent to general order until 48 hours after entry of the vessel, and extensions of this period might be made by the collector. Sec. 448, Tariff Act of 1922. It seems, therefore, that there was ample time for the importer to examine his private invoice then in his office before making his entry. The goods were purchased by the importer in January, 1925, and for anything that appears the private invoice may have been in his possession for some time prior to March 17 It is impossible to escape the conviction from these facts that the petitioner did know, or by the exercise of the care which an ordinarily prudent person would have exercised, could have known, that he was grossly undervaluing his entered goods.

The following cases are in point: In *Stone & Downer Co.* v. *United States*, 13 Ct. Cust. Appls. 649, T. D. 41488, the importer entered A. R. mica at the price of G. S. mica; in *Hensel, Bruckmann & Lorbacher* v. *United States*, 13 Ct. Cust. Appls. 498, T. D. 41377, the broker, having full information on the fourth page of his invoice relative to a certain luxury tax, failed to look at that page and entered the goods without adding such tax to make dutiable value; in *Simon Co.* v. *United States*, 13 Ct. Cust. Appls. 472, T. D. 41366, the importer, knowing the goods to have been purchased with Swiss *francs*, entered them in French *francs*; in *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205, golf balls were purchased and entered at a price which the importer should have known was a bargain price. In all these cases remission was refused.

In *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250, we said:

And if the evidence he submits affirmatively shows that he represented a fact to be true, to wit, a certain value of his goods at the time of shipment, and at the time having no reasonable grounds for believing his representations to be true, or if it shows that his representations were made with reckless disregard of their truthfulness, it can not be said to corroborate his denial of intent, but would have the opposite effect. Proof that a representation is made with the knowledge that reasonable inquiry might develop its untruthfulness would have the same tendency.

Again we said in *Union Food Products Co.* v. *United States,* 13 Ct. Cust. Appls. 332, T. D. 41253:

He represents that he did know, when in fact he did not know, notwithstanding the fact that there were circumstances within his knowledge which should have caused him to ascertain the truth before giving expression to it. To hold otherwise would be to encourage frauds against the Government, and we think section 489 was intended to prevent frauds.

To the same effect is *Linen Thread Co.* v. *United States,* 13 Ct. Cust. Appls. 395, T. D. 41322, where we said:

An unexplained misstatement of prices in an invoice or a statement of values which an importer has no good reason to believe to be correct, or which a prudent, careful business man would not vouch for without further investigation, might well be regarded as at least misleading, if not a misrepresentation of fact.

We are of opinion that the findings of the court below are clearly contrary to the weight of the evidence, and it therefore follows that the judgment of the Board of General Appraisers should be and is *reversed.*