MITSUBISHI SHOJI KAISHA (LTD.) *v.* UNITED STATES (No. 3405) [1]

---

[1] T. D. 45227.

United States Court of Customs and Patent Appeals, October 26, 1931

*Puckhafer, Rode & Tompkins* (*George J. Puckhafer* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Lyman Ward*, special attorney, of counsel), for the United States.

[Oral argument October 8, 1931, by Mr. Puckhafer and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

Appellant has appealed to this court from a judgment of the United States Customs Court denying its petition for remission of additional duties assessed under the provisions of section 489 of the Tariff Act of 1922 on an importation of crab meat entered at the port of Seattle, Wash.

The opinion of the trial court, T. D. 44350, contains a comprehensive and lucid statement of the facts.

Briefly, it may be said that the shipment was a consignment from Mitsubishi Shoji Kaisha (Ltd.) of Tokio, Japan, to itself, or one of its branches, in New York. The company has also a branch at Seattle, Wash., which is stated to be a forwarding branch. On the morning of April 23, 1928, the Seattle branch received a letter from the New York branch, dated April 19, 1928, advising that the shipment was expected to reach Seattle that day and asking that it be entered and duty paid there. In a postscript to this letter it was stated:

In making the above entry, kindly have your customs broker submit the invoice to the appraiser for value in order to avoid penalty. As a matter of information, for your reference only, we might state that the appraisers here are returning fancy crab-meat halves at 36 yen, plus packing.

This letter seems to have conveyed to the Seattle branch its first information that the shipment was expected. Immediately upon its receipt an employee of the Seattle branch telephoned its customs broker and gave the information contained in the letter for the broker's guidance in making entry, informing the broker that the branch had no documents with which to make same. The shipment arrived on the day stated, that is, April 23, 1928, on the vessel *President Cleveland*, but no consular invoice or other papers were received by the Seattle branch on that vessel.

The customs broker appears to have twice consulted with the customs examiner between April 23 and April 25, advising that the importer was without documents and without information as to market value. He asked to see the copy of the consular invoice supposed to have been sent to the customhouse in Seattle, but was informed that it had not been received. He states that the examiner made examination of papers in his office and advised that according to his information the value was 36 yen per case.

On April 25 the Seattle office wired the New York office advising that no documents had been received and asking at what value entry should be made. In reply the New York office wired:

Retel date crabmeat Cleveland last entries New York half pounds thirty eight yen our opinion consular invoice will show thirty eight yen have your broker ascertain value acceptable to appraiser and enter accordingly if higher than thirty eight yen stop. Necessary you file bonds in order to make entry.

The contents of the above-quoted telegram seem to have been made known to the customs broker, but, notwithstanding the statements about 38 yen in the telegram, the entry was, on April 27, 1928, made at 36 yen, and this without disclosing the contents of the telegram to the customs officials.

On April 28 the consular invoice was received at the Seattle office, it having arrived on another vessel, and same was forwarded to the customs brokers on April 30.

There is nothing in the record to indicate that this copy of the invoice was brought to the attention of the customs office until August 2, 1928. Exhibit 2 is a letter dated April 30, 1928, addressed to the broker by appellant's Seattle office, stating that the consular invoice was enclosed, and this exhibit bears a notation reading:

Rec'd about July 16/17th. Invoice filed with Customs 8/2/28.

This was a little more than three months after it had been received by appellant's Seattle office.

The appraiser in the meantime had apparently made investigations as to value by writing Customs Information Exchange, and sometime in the early part of August he advanced the valuation, as entered, to 40 yen per case, plus .09 yen for packing. It is a fair assumption that

the customs officials at Seattle had also received the triplicate invoice in the interim between April 27 and August 2.

It may be further stated that the customs broker entered a protest against the advanced valuation, but this was subsequently dismissed by the Seattle office, the increased and additional duties paid, and the petition for remission filed.

Under this state of facts, recited in somewhat greater detail in the well-reasoned opinion of the Customs Court, that tribunal, citing numerous authorities, disallowed the petition and the pending appeal was taken.

We are not convinced that the Customs Court erred.

It must be borne in mind that the Tokio, Japan, Seattle, Wash., and New York, N. Y., branches are all parts of the same company and that this was a consigned shipment. Paragraph 6 of section 481 of the Tariff Act of 1922 provides that in such cases the invoice shall state—

the value for each item, * * * or, in the absence of such value, the price * * * that the * * * shipper or owner would have received, or was willing to receive, for such merchandise if sold in the ordinary course of trade and in the usual wholesale quantities in the country of exportation.

It is here insisted that the Tokio office complied with the quoted provision and that this is in appellant's favor.

In *Cintes* v. *United States*, 16 Ct. Cust. Appls. 90, 91, this court said:

The importer argues that inasmuch as his consular invoice plainly states the item in question, he ought not to be held to have attempted to defraud, conceal, misrepresent, or deceive the officials of the Government as to the dutiability of the item in question. This suggestion is not in harmony with our judgments in similar cases. *Hensel, Bruckman & Lorbacher* v. *United States*, 13 Ct. Cust. Appls. 498, T. D. 41377; *United States* v. *North American Mercantile Co.*, 14 Ct. Cust. Appls. 68, T. D. 41578; *Stone & Downer Co.* v. *United States*, 14 Ct. Cust. Appls. 439, T. D. 42061; *Grebstein* v. *United States*, 15 Ct. Cust. Appls. 285, T. D. 42470.

In the brief of appellant there is no particular stress laid upon the fact that the customs broker conferred with the examiner relative to value before making the entry, but it is a fact proven in the case, and we assume that the testimony to the effect that some sort of opinion was expressed by the examiner about a 36-yen value is correct since it is not contradicted. Conceding this to be true, however, it is well settled that it is no part of the official duty of the examiner or the appraiser to give such information to a shipper, nor can the customs officials be bound, in determining value, by any information so given, nor can such information be relied upon to obviate the duty of the importer to ascertain and enter at the true value. *Proctor Co.* v. *United States*, 12 Ct. Cust. Appls. 535, T. D. 40735; *Vietor & Achelis* v. *United*

*States*, 14 Ct. Cust. Appls. 13, T. D. 41529; *Woolworth Co.* v. *United States*, 16 Ct. Cust. Appls. 188, T. D. 42812.

The telegram of April 25 from the New York office gave the information that the merchandise was being valued at 38 yen in New York and expressed the opinion that invoice "will show thirty-eight yen" but instructed that Seattle office "have your broker ascertain value acceptable to appraiser and enter accordingly if higher than thirty-eight yen."

The broker apparently construed this telegram to mean that entry was to be made at whatever value was acceptable to appraiser and made no disclosure of the contents of the telegram to that official, so far as the record shows.

The Seattle office of appellant permitted this to be done, notwithstanding the fact that it wired New York asking at what value entry should be made and had the reply which has been quoted, *supra.*

There is no satisfactory explanation in the record of the failure on the part of both the Seattle and New York branches to cable the Tokio branch, which would seem to have been the most natural, orderly, and satisfactory course to pursue, particularly in view of the duty which the statute imposes upon the owner of a consigned shipment of merchandise relative to stating value on the invoice as above quoted.

It is argued here that the Customs Court did not give any weight to the fact that appellant made a true declaration of value before the United States vice consul in Japan and that weight should be given to it.

It seems to us, however, that any favorable impression created by this fact is overbalanced by the course of conduct pursued after the merchandise had arrived here unaccompanied by documents.

The duty of ascertaining the true dutiable value and entering it at that value rested upon the importer. This duty was delegated to a customs broker who received instructions capable of the interpretation that he was simply to satisfy the appraiser. He obtained information of some sort from an examiner, which he made the basis for an entry, in which the merchandise was undervalued, although he had in his possession at the time, and did not disclose to the examiner or to the appraiser, information that in New York like merchandise was being valued at a higher rate. Appellant must, of course, be held to responsibility for the action of its agent—the broker. Appellant itself had the consular invoice from Japan as early as April 28, the very day following the pro forma entry, and it was in the hands of the agent on the 30th. It is quite possible, we surmise, that had it been immediately presented it might have been in time to have secured an amended entry. It would at least have been some evidence of good faith. But this was not done.

In the case of *Lowe Co.* v. *United States*, 15 Ct. Cust. Appls. 418, T. D. 42590, the principal office of the importer at New York, within five or six days after an entry by its branch office at Baltimore, informed said branch office that the value at which entered (in that case the invoice price) was too low. An application to amend the entry was refused because the goods had already come under the observation of the appraiser.

The Customs Court refused relief in that case, and its judgment was affirmed by this court. We there said:

> We have definitely held that where an importer has no knowledge of the value of goods imported he is put upon inquiry as to the value of such goods and that if he fails to make such inquiry and enters his importation at so low a value as to result in the imposition of additional duties, he can not be relieved therefrom by taking the proceedings provided for in section 489. * * *

After citing numerous cases we continued:

> The rule laid down in those cases must be followed in determining the present appeal. To depart from it would result in a discrimination and a confusion which could not be justified. In justice to the "New York headquarters" of the Joe Lowe Co., we must say that the promptness with which the entered value was repudiated and the steps which were immediately taken to call the attention of the customs authorities to its incorrectness merit and receive the commendation of the court. To grant the prayer of the appellant's petition, however, would simply establish a precedent of which advantage might well be taken by others not so scrupulous as the "New York headquarters" of the appellant.

Obviously, the conduct of petitioner in the *Lowe Co.* case placed it in a much more favorable light than does the conduct of appellant in the instant case, and it would be most inconsistent to grant here a relief denied there. To grant the petition would, we think, be out of harmony with the consistent line of decisions which the courts have rendered in applying the remission statute.

The judgment of the United States Customs Court is *affirmed*.