LEE & CO. *v.* UNITED STATES (No. 2278) [1]

PETITION FOR REMISSION OF ADDITIONAL DUTIES—SUFFICIENCY OF EVIDENCE.
   Where the management of an idle factory offered to make merchandise at a certain price, and the importers, without informing themselves as to the market value, entered it at the invoice price, the undervaluation was not shown, in the language of section 489, Tariff Act of 1922, to be "without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise," since the circumstances under which they bought were sufficient to put importers on notice that they might be buying below the market.

United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, Abstract 45756

[Affirmed.]

*Allan R. Brown* for appellants.
*William W. Hoppin,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument Oct. 7, 1925, by Mr. Brown and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

In this case William A. Foster & Co., customs broker, imported for the account of Harry C. Lee & Co. golf balls which were entered at the port of New York at the invoice value, the price actually paid for them by Harry C. Lee, senior member of Harry C. Lee & Co., the firm for whose account the merchandise was imported and entered.

The goods were appraised at their entered value, but on appeal to reappraisement by the collector they were finally appraised on December 21, 1922, at 11 shillings 9 pence per dozen, an advance over the invoice price and entered value.

On the 23d day of January, 1923, Harry C. Lee & Co. filed a petition with the Board of General Appraisers which alleged and prayed for a finding that the entry of the merchandise was made without any intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to

---

[1] T. D. 41205.

the value of the merchandise. The petition was filed under that part of paragraph 489, which reads as follows:

PAR. 489. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except * * * upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or *misrepresent the facts* of the case or to deceive the appraiser as to the value of the merchandise. · * * *

On the hearing of that petition the evidence showed without contradiction that the importation was made by William A. Foster & Co. for the account of Harry C. Lee & Co., and that the golf balls were purchased by Harry C. Lee, senior member of the firm, in the summer of 1921 while he was on a visit to Scotland. It appears from the record that Harry C. Lee visited the president of the Craigpark Electric Bulb Co., whom he had known for 20 years, and inquired whether that company had anything which could be used in the United States. The president took Lee through the company's works and after stating that the factory was idle announced that the company would make golf balls if Lee would undertake to sell them in the United States. Although Lee's firm had not dealt in imported golf balls, he agreed without bargaining or haggling to take the golf balls at the price stated in the consular invoice.

The golf balls purchased were known as "Mono" golf balls, and that type of ball and its value was unknown to Lee. Before shipment of the golf balls Lee asked in a general way for the "Mono" ball, but not finding it listed he decided that the value of the ball would be determined by the market made for it by his firm.

Whether Lee made inquiry from wholesale dealers of golf balls as to the market value of the "Mono" ball does not appear from the evidence, and his testimony produces the very decided impression that he and his firm had no information whatever as to the value of the "Mono" ball other than the price paid for it to the Craigpark Electric Bulb Co. If an importer has no information and knows of no circumstance or circumstances which would raise a reasonable doubt in the mind of a prudent business man as to the true market value of purchased goods, the price paid for them in the ordinary course of trade in a free open market may well be accepted by him as their market value. Harry C. Lee purchased the "Mono" balls from a man whom he had known for 20 years and for the purpose of creating a market for them in the United States. He bought them with full information that the factory of the company from which the purchase was made was idle, and as a business man he should have known that manufacturers frequently find it advantageous to keep their factories in operation even if goods are produced and sold at less than their market value.

Lee knew nothing of the value of imported golf balls, but he did know the circumstances surrounding his purchase, and these circumstances put him upon notice that he might be getting the balls at a bargain and at less than their market value.   Therefore he could not rely on the price paid as market value and was bound to make inquiry of dealers in golf balls and of those acquainted with the market as to the price at which such or *similar* merchandise was freely offered for sale in the usual wholesale quantities and in the ordinary course of trade, etc., to all purchasers in the principal markets of the country of exportation.

No such inquiry was made by the importer and the attempt by him to find out whether "Mono" balls were listed measured his investigations as to the value of the importation.   Even if "Mono" balls were not listed or sold, the record discloses no effort whatever on importer's part to ascertain either the listing or the value of merchandise similar to "Mono" balls.

The importing house did not know the market value of "Mono" balls or of similar merchandise.   Because of the circumstances surrounding the purchase, it could not depend on the price paid for the balls as the market value thereof.   Consequently when the goods were entered at the purchase price paid as their market value, Harry C. Lee & Co., by its authorized agent, stated a value to the customs officials which the firm did not know to be true, which it had no good or sound reason to believe to be true, and which proved to be incorrect.   In our opinion the board was justified in denying the petition and in refusing the finding prayed for.

The judgment of the board is therefore *affirmed*.