I. Shainin & Co. *v.* United States (No. 3070)[1]

[1] T. D. 43076.

United States Court of Customs Appeals, November 19, 1928

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[Oral argument October 5, 1928, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Lawrence, Groom & Co., brokers at San Francisco, filed nine petitions for remission of duty under section 489 of the Tariff Act of 1922, on behalf of the appellants, I. Shainin & Co. The consumption entries covered by the petitions were numbered 14951, 15602, 16249, 16828, 17557, 371, 958, 1620, and 2227. On hearing before the Customs Court the prayers of these petitions were denied, and the importers have appealed.

The goods imported were various manufactures of brass, such as vases, gongs, foot warmers, etc., and were exported from Shanghai, China. I. Shainin & Co., the appellants, were merchants doing business as importers in San Francisco, and had a branch house in Shanghai doing business under the same name, which branch house was managed by the brother of S. Shainin, a member of the San Francisco firm. It had been the custom of the San Francisco firm to make these importations about once a fortnight since 1920 or 1921. Stanley L. Groom, a member of the brokerage firm of Lawrence, Groom & Co., testified that he made these various entries and was instructed by the appellant to enter the goods at their "proper market value," and that it was his invariable custom to show the invoices to one of the United States examiners before making the entries, and to raise or lower the entered values according to the information received from him; that in no case here involved were any additions or corrections made to the invoiced prices in making entry; that the various entries involved here were made in the period between and including May 5 and August 17, 1925; that the foreign market value of the imported goods fluctuates from time to time on account of labor conditions; and that during the summer of 1925 the Shanghai house of Shainin & Co., in response to letters from the San Francisco house, invited the American consul at Shanghai to visit their office and "compare the prices."

S. Shainin testified that the branch house was instructed to invoice the goods at "the exact purchase price paid to the manufacturers"; that on about the "end of May or the beginning of June, 1925,"

he was informed by the examiner that the "merchandise was being held up." Thereupon he wrote to his brother in Shanghai, who, in turn, communicated with the American consul's office, requesting information as to the best method of arriving at the value of the imported goods. The commercial attaché at Shanghai then visited the office of Shainin & Co., inspected their records, compared their prices with data available in the consul's office, and informed Shainin & Co., that they were buying at lower prices than other exporters. Thereupon it was agreed that in the future notation should be made upon the invoices, indicating that in making entries the values should be advanced 10 per centum. Thereafter, whenever such notations were found upon invoices, beginning in September, 1925, such advances were made. The brassware in question is not manufactured by Shainin & Co., of Shanghai, but is bought by them from native manufacturers, mostly in Shanghai. Shainin further stated that his house was able to buy more cheaply than others because they bought direct from the "suppliers," without a commission, while others bought from commissionaires or agents.

T. E. Hearty, the examiner of merchandise at San Francisco, testified that prior to the time of the first entry here involved he received a price list of brassware from the customs attaché at Shanghai and noticed the prices different from the entered values in appellants' entry. He then called importers' attention, through the appraiser's office, to these discrepancies, and he also caused the attaché in Shanghai to be notified, which notification brought about an investigation. After the Shanghai investigation, in September, 1925, he again called importers' attention to the result thereof, and, thereafter, but not before, advances of 10 per centum were made by the importers in their entered values.

We are unable to say on this record that the lower court's finding was contrary to the weight of the evidence, or that the petitioners affirmatively established that they were entitled to remission. The importers here knew, before any of the entries herein were made, by notice from the customs officials, that the dutiable values given by them were being questioned and the entries "held up." Irrespective, however, of this information, they continued to enter future shipments of these goods at like values. The information thus given to them by the customs officials was a sufficient circumstance to raise a reasonable doubt in the mind of a prudent business man as to the true foreign market value of his goods, and they were not justified, thereafter, in entering other goods at values which they knew were being questioned, until they were fully advised. This is the rule announced in many cases. *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205; *Glendenning, McLeish & Co.* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320; *Wolf & Co.* v. *United States*, 13

Ct. Cust. Appls. 589, T. D. 41453. Again, the importers were in the business of importing Chinese brassware, and had been for some years. They must have been informed through their Shanghai house of the state of the market. They knew they were buying direct from the manufacturers, and without a commission, and that other dealers did not have this advantage. In such a case it is hard to understand that they were acting in good faith when they valued their goods, for duty purposes, at less than what they must have known was their foreign market value.

We are of opinion there is no error in the record, and the judgment of the Customs Court is, therefore, *affirmed*.