KACHURIN DRUG Co. *v.* UNITED STATES (No. 4191)[1]

[1] C. A. D. 41.

United States Court of Customs and Patent Appeals, March 6, 1939

*Perry Goldberg* (*John O'Connor* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument February 9, 1939, by Mr. O'Connor and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant has here appealed from the judgment of the United States Customs Court, Third Division, denying its petitions for a finding that its entries of certain imported merchandise at values less than those returned upon final appraisement were made without any intention to defraud the revenues of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The entries, made under the Tariff Act of 1930, consisted of two shipments of "Strip Agar Agar" which were shipped from Japan by Mitsui Bussan Kaisha, Ltd., of Kobe.

Petition 5615–R covers the merchandise entered October 23, 1935. It was entered upon arrival at 230 yen per 100 kin, a price which importer's bookkeeper, Miss Esther Gertel, testified was the price at which this type of merchandise had been previously entered. The entered value in United States currency was $4,687. Miss Gertel further testified that upon receipt of the commercial invoice from Mitsui & Co. (the New York branch of the Japanese exporter) which contained the statement that the market value at time of shipment was 250 yen per 100 kin, she called the broker and notified him to amend the entry in accordance with that figure. This was done, the entry being made in United States currency to the amount of $5,091.22. The merchandise covered by this entry was advanced in value by the appraiser to 290 yen per 100 kin, or $5,898.86 in United States currency, being equivalent to an advance of 15 per centum.

Mr. F. Harry Lewis, a United States examiner, testified that before entry was made, an inquiry for market value covering this particular merchandise was made, and that the broker inquiring was informed that the correct market value was 290 yen per 100 kin; that the broker was given an opportunity to amend the entry in accordance with this information but that he did not do so.

Mr. Philip Kachurin, sole owner of the Kachurin Drug Co., the importer, testified that when he learned that the examiner was going to advance the value of the merchandise he telephoned to four other importers of the same kind of merchandise in an attempt to find the market value of the merchandise, and was informed that no shipments had been received by them during the month and as they had no information he did nothing further in the matter.

The shipment covered by petition 5516-R was entered on March 17, 1936, at 190 yen per 100 kin or in United States currency $2,783, in conformity with the statement appearing on the commercial invoice. The appraiser advanced the entered value to 195 yen per 100 kin, or in United States currency $2,888.36, an increase of about 5 per centum. The record shows that there was no advance inquiry as to market value concerning this entry, but Mr. Lewis testified that he gave the broker opportunity to amend the entry, which was not done.

Appeals for reappraisement were taken and it was found that the values as found by the appraiser were correct.

The trial court in the instant case said in part:

Upon careful consideration of all the evidence introduced at the trial, we are of opinion that petitioner has failed to sustain the burden of proof. Before the entries were made the petitioner had notice by information given its agent, the customs broker, that the dutiable values given in the entries were being questioned. This information was sufficient to put a prudent business man on notice as to the true market value of his goods (*I. Shainin & Co.* v. *United States*, 16 Ct. Cust. Appls. 320, T. D. 43076), yet the second entry was made at a value based on the same kind of information found to be unreliable in the first shipment. The activity shown by the petitioner in endeavoring to ascertain the correct dutiable value after entry is not sufficient evidence of good faith before entry to sustain his burden of proof. The petitions are denied. Judgment will be entered in favor of the respondent.

Appellant upon appeal relies for reversal of the judgment of the trial court upon its contention that the record shows that Mitsui & Co. always put the market value on the bottom of the commercial invoice; that Miss Gertel, acting for the importer, immediately upon receiving from Mitsui & Co. the commercial invoice covering the first entry, caused that entry to be amended in accordance with the statement as to market value appearing on the invoice; that she entered the merchandise covered by the second entry in accordance with the value appearing on the commercial invoice covering that shipment, and that in both instances she had no other knowledge of market value.

It is urged, in effect, that since she had in the past safely relied upon the value stated in the Mitsui & Co. invoices and had had no trouble with them, she was justified in relying upon them in making the instant entries.

The trouble with appellant's position is that it omits to take into consideration certain facts which the trial court regarded and which we regard as very important in deciding the issue. The record discloses that the examiner gave notice in advance that he would have to advance the value of the merchandise and that the entered values were incorrect. Abundance of opportunity was offered to appellant so that it might communicate further with Japan or elsewhere, if necessary, in order to determine whether or not it had made a mistake in entering its merchandise. Instead of acting upon the advice given, appellant's representative, it seems, relied upon his belief that the examiner was wrong and sought to obtain evidence to sustain his view in an appeal for reappraisement. He inquired from other importers as to the correct value and received no information as to value. As we look upon the matter this is not a circumstance which tends to support the conclusion that appellant had met its burden in proving to the trial court that its entries were made in good faith.

After Mr. Kachurin had been told that the entered value of the merchandise covered by petition 5615–R was incorrect, which was after said amendment, he took the position that the examiner was wrong, and after appellant's broker had been called the third time, the broker told the appraiser to "Go ahead. Do your worst." Kachurin was asked as to the purpose of his making inquiries of other importers. We quote from his testimony:

X Q. It wasn't a question of entry that was in your mind; it was a question of whether you were getting stuck, wasn't it?—A. That is right.

X Q. You wanted to see if the price was right?—A. That is right.

X Q. And that was the sole purpose of your making these inquiries?—A. Yes.

X Q. And they couldn't give you any information?—A. Any information, couldn't obtain.

In urging that appellant in making said entries exercised good faith the point is pressed that it had the right to rely upon the Mitsui & Co. invoices which in the past had been found reliable. This contention is hardly in harmony with the fact that long after the entries were made, Mr. Kachurin felt called upon to make inquiries from four different sources to ascertain if Mitsui & Co. were dealing fairly with him.

The question presented here and to the trial court is not to be considered in the form in which the appellant states it. It is not a question as to whether the record affirmatively shows that appellant entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute.

Upon the facts of record, we are in agreement with the trial court in holding that the appellant "failed to sustain his burden of proof" and that its petitions under section 489, Tariff Act of 1930, were properly denied.

The judgment of the United States Customs Court is *affirmed*.