WILLIAM G. McBETH *v.* UNITED STATES

No. 8114.—

Entry No. 2222.

(Decided May 20, 1952)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Samuel D. Spector, Joseph E. Weil,* and *Richard M. Kozinn,* special attorneys), for the defendant.

FORD, Judge: The appeal listed above involves the question of the proper dutiable values of certain teakwood jewelry boxes, carved wood figurines, and mah jong sets of imitation ivory which were exported from China and entered at the port of New Orleans, La. The jewelry boxes were invoiced and entered at $1.70 each and appraised at $4 each, net packed; one pair of figurines was invoiced and entered at $2 per pair and appraised at $8 per pair, net packed; two other pairs

of figurines were invoiced and entered at $1.50 per pair and appraised at $7 per pair, net packed; and the mah jong sets were invoiced and entered at $3 per set and appraised at $10 per set, net packed.

The importer of the involved merchandise, who was a merchant seaman, testified that in recent years as he traveled around he had been accumulating this oriental merchandise with the anticipation of later establishing a small retail shop for the sale of this merchandise. As to the value of this merchandise, he testified in effect that in order to familiarize himself with the prices and market conditions for merchandise such as that here involved, he went to the United States consul at Hong Kong and asked the consul to furnish him with a list of reputable wholesale dealers in this class of merchandise, with which request the consul complied.

The witness further testified that he visited the entire list furnished him by the consul and then made his purchases; that he went to these various wholesale dealers and looked over their merchandise, and he did not find much variation in their prices; that he actually paid in United States money $3 per set for the mah jong sets, $1.50 per pair for 2 pairs of the figurines, $2 per pair for the dragon design of the figurines, and $170 for a lot of 100 jewelry boxes, but that only 30 of the jewelry boxes are on the entry before the court, and that the greater portion of the merchandise, not now before the court, was in the free zone at New Orleans.

The witness also testified as follows:

Where I purchased them was strictly a wholesale house, they didn't do any retail business at all. I visited enough wholesale houses in Hong Kong to satisfy me that I had not paid too much.

\* \* \* \* \* \* \*

The price is invariably marked in Chinese which of course is over the head of the Americans, but all Americans living there will tell you that the white man will pay more for the merchandise than the Chinese will.

\* \* \* \* \* \* \*

At the time I bought the merchandise I was not in a position to know where I stood because it was the first time I had seen the item and I didn't know whether I was paying too much or not but in Hong Kong I found that it was the going price to Americans.

\* \* \* \* \* \* \*

Well, in my case, it [wholesale price] is the rock-bottom price obtained by a white man in China which is always above what the Chinaman can buy it for.

Exhibit 5 is an affidavit by William Rosenthal of San Francisco, Calif., in which he identifies exhibit 3 in this case as being identical in every respect to 50 jewelry boxes he purchased from the same wholesaler in China and entered at San Francisco on December 15, 1949. Affiant further states:

That he personally knows, of his own knowledge, that the purchase price for said 50 jewelry boxes covered by said San Francisco entry no. 5002, was $0.77 each, U. S. currency, and that no additional payment was made and that no additional rebate was received for the said 50 jewelry boxes; that there is no relation-

ship whatsoever between the Howard Brothers & Co. of Shanghai and the American Cathay Trading Co. of San Francisco other than seller and buyer.

On cross-examination, the witness testified in part as follows:

R. X Q. You yourself didn't inquire or find out what the value was for this merchandise?—A. The best authority I have is the American consul.

R. X Q. What do you yourself know?—A. My knowledge is based largely on the assurance given me by the American consul's office in Shanghai.

R. X Q. And that is the only basis for you knowledge?—A. That is not my only basis, but I place the most credence in it.

R. X Q. And the other information was from conversations with American residents and Chinese who were not engaged in the business.—A. Yes.

The testimony of the witness falls far short of establishing any value for the involved merchandise lower than that found by the appraiser. It is likewise insufficient to overcome the presumptively correct values found by the appraiser.

With reference to the affidavit of William Rosenthal, exhibit 5, it is noted that this affidavit refers to 50 jewelry boxes only, without any suggestion that the purchase of the 50 jewelry boxes therein referred to was made in the ordinary course of trade in the principal market of the country of exportation and in the usual wholesale quantity. The absence of these elements from the affidavit renders it practically worthless as evidence of the value of the said jewelry boxes, and since it makes no reference to any of the other items of merchandise here involved, it can be given no consideration or weight as to the value of these other items.

In *Collin & Gissel* v. *United States*, 5 Cust. Ct. 488, Reap. Dec. 4975, it was observed as follows:

\* \* \* The plaintiff has the burden of showing the price at which such or or similar merchandise was freely offered for sale in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade at the time of this exportation. The affiant failed to name the principal market in Germany in which such merchandise was freely offered for sale and he failed to state the usual wholesale quantities in which such goods were sold in the ordinary course of trade at the time of this exportation either for consumption in Germany or for export to the United States. Furthermore, he did not state the price at which such or similar merchandise was freely offered for sale for export to the United States. He merely stated the price at which he purchased the merchandise in Germany and that such price represents the market price for home consumption.

Upon this state of the record the court held that:

\* \* \* the record fails to establish facts necessary for a legal appraisement and that the evidence submitted by the plaintiff is insufficient to overcome the presumption of correctness attaching to the appraisement. Accordingly, the defendant's motion to dismiss the appeal is granted and the appeal is hereby dismissed. \* \* \*

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, the Court of Customs and Patent Appeals stated:

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* If the importer failed to do this, then his appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser * * * would have remained in full force and effect. * * *

\* \* \* \* \* \* \*

Nowhere in the testimony of either witness are we able to find any statement to show that the entered value was, at the time of the exportation of the merchandise from Belgium to this country, the price at which Proost & Co., or anyone else, was freely offering such or similar merchandise for sale to all purchasers in the principal markets of Belgium, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

In view of the foregoing authorities, this record as a whole is not, in my opinion, sufficient to overcome the presumptively correct values for the involved merchandise found by the appraiser or to establish values lower than those found by the appraiser in accordance with section 402 of the Tariff Act of 1930. The appraised values are therefore affirmed. Judgment will be rendered accordingly.