**No. 57113.**—L. Bamberger & Co. *v.* United States, petition 6886–R (New York).

RAO, Judge: Petitioner herein seeks the remission of additional duties assessed, pursuant to the provisions of section 489 of the Tariff Act of 1930, by reason of the fact that the final appraised values of two importations of decorated china tableware exceeded the entered values thereof.

It appears from the record and the official papers that the invoice values, upon the basis of which each of the involved entries was made, were accepted as correct by the appraiser, and that the entries were returned to the collector without advances. Subsequently, as the result of the receipt of new price lists, the collector filed an appeal for reappraisement. Being then possessed of information that the higher values were correct, petitioner did not contest the reappraisement proceeding, and the values claimed by the collector became the final appraised values.

At the trial of the instant case, petitioner called as its only witness, Mary Cataldo, manager of the foreign office of L. Bamberger & Co. She testified that she had held that position for 12 years and that it was her duty to act as intermediary between the buyers and the foreign offices and to take charge of petitioner's importations. She personally handled the papers in connection with entries N 1056 and N 952, which are those before the court in this case, and presented them to the broker for entry.

She stated further that the involved merchandise was purchased in Germany, in the spring of 1948, by petitioner's buyer. At that time, the economy of Germany was under the control and direction of the American Military Government, which supervised all purchases made and established the prices to be charged by the foreign vendors. It was the belief of petitioner's witness that during this period there was but one price offered to all purchasers.

It also appears that L. Bamberger & Co. is a division of R. H. Macy & Co., which organization maintains a foreign office in Frankfurt am Main. At the time when the instant purchases were consummated, petitioner's foreign office had been recently opened, and its personnel were not completely familiar with the proper procedures involved in the purchase of foreign merchandise. Nevertheless, it was the practice for the buyer to make the purchase and the foreign office to make the payment.

When the buyer returned to the United States, he issued instructions to the effect that merchandise was to be entered at the invoice values, in this case the prices actually paid. He also advised that in the event that there were any changes in price, the foreign office would notify Miss Cataldo. The foreign office did not, in fact, advise her of any change in price, and the entries were made at the invoice values. It was not until long after entry, and several months after the merchandise was displayed for sale, that the witness learned that there was an increase in the price of this merchandise.

The witness testified further that the undervaluation was an unintended mistake; that as soon as the higher value was ascertained, petitioner willingly paid the duty; that the foreign office was advised to exercise greater care; and that there was no intent to defraud the revenue of the United States or to mislead or deceive the appraiser or any other customs officials.

Upon the record as made by petitioner, we are convinced that the undervaluation of the instant merchandise was the result of an honest mistake, occasioned by the inexpertness of its newly established foreign office, and that, at the time of entry, petitioner had no reason to believe that the invoice values were incorrect.

In the case of *Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320, it was stated:

We have had occasion in several instances to review the judgments of the Board of General Appraisers [now the United States Customs Court] in remission cases since the approval of the Tariff Act of 1922. Each case has presented a state of facts peculiar to itself and it has, therefore, been necessary to dispose of each according to the ultimate conclusion arrived at after a consideration of them. To announce general principles applicable to all such cases is difficult and in some respects impossible. But we have said that the issue principally involved in such cases is the good faith and intentions of the importer. *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440. If an importer has no information and knows of nothing which would raise a doubt in the mind of a reasonable and prudent man as to the correctness of the market value of purchased goods as stated by him, then the price paid for them in the ordinary course of business may be accepted by him as their true market value. *Lee & Co.*, v. *United States* 13 Ct. Cust. Appls. 269, T. D. 41205. If, however, he represents his goods to have a certain value and has at the time no reasonable grounds for believing his statements to be true, or if his representations are made with reckless disregard of their truthfulness, or if there are circumstances which would put a reasonable and prudent man on inquiry, and he makes no such inquiry, then the importer has not sustained the burden placed upon him by the statute. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

As in the cited case, the record in this case indicates no circumstance calculated to put a reasonably prudent man upon notice that the invoice values did not truly reflect the market value of his merchandise.

We are satisfied, therefore, that the entry of the instant merchandise at values less than those found upon final appraisement was without any intention to defraud the revenues of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is, therefore, granted.

Judgment will be entered accordingly.