**No. 61973.**—Royal Cathay Trading Company *v.* United States, petition 7218–R (San Francisco).

WILSON, Judge:. This is a petition for remission of additional duties filed pursuant to section 489 of the Tariff Act of 1930,·which duties accrued by reason of the undervaluation on entry of certain merchandise imported from China and entered at the port of San Francisco.

The petitioner is a copartnership, composed of Francis Leong, Richard Yee, and Mrs. Rose Lum. This firm began business as importers in 1947 and, during the years 1948 through 1950, imported merchandise from Peking, China, where it employed one Y. C. Lee and his wife, Yao Dian Fong, as purchasing agents. During the period that the petitioner was purchasing merchandise in China through its agents, the value of the Chinese currency fluctuated to such an extent over short periods of time that it became impossible to make contracts providing for future delivery of goods. As a result, according to the undisputed testimony of Mr. Leong and Mrs. Lum, the petitioner was required to send sums of cash to its agents to enable them to make immediate cash purchases and thereby avoid the precipitate and continuous variation in prices resulting from the rapid fluctuation in value of the Chinese currency. Furthermore, ready money was required by the petitioner's agents, so they could advance cash to the impoverished Chinese manufacturers to buy raw materials and pay wages for the manufacture of the goods desired by the petitioner. According to the uncontroverted testimony of these same witnesses, after the petitioner had purchased and paid for merchandise, and had it ready for exportation to the United States, the Chinese Government would not grant permission for the exportation of the goods until such time as the petitioner sent sight drafts or letters of credit equal to the value of the merchandise for which payment had already been made to the manufacturers. These drafts and letters of credit in United States dollars were converted into Chinese currency, which was then paid to the agents of the petitioner. This procedure evidently was followed by the Chinese Government for the purpose of building up its reserve of American dollars.

As a result of the foregoing transactions, the petitioner, over a given period of time, as shown by the testimony of Mr. Leong and Mrs. Lum, corroborated by documentary evidence hereinafter referred to, forwarded to China a considerably greater amount in American dollars than the value of the goods received by the petitioner from China over the· same period of time. As a consequence, the petitioner, during the whole period of its dealings in China, had assets consisting of cash and merchandise on hand in China considerably in excess of the value of the goods received by it in the United States. This situation existed when all dealings with China finally were banned by the American Government.

In order to understand the real intention of the parties in this case, and to determine whether "the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise," it is necessary to review the dealings between the United States customs agencies and the petitioner herein. It appears that the petitioner entered the goods at the value at which the merchandise was invoiced to it. After the entries were made, the petitioner, through its broker, W. J. Byrnes & Co. of San Francisco, received a letter from the assistant collector of customs at San Francisco, dated February 1, 1951 (petitioner's exhibit 2), advising the petitioner that, under the provisions of section 592 of the Tariff Act of 1930, it had incurred a penalty of $122,017.61, "representing the forfeiture value of certain merchandise imported by you from Peking, China. The viola--·tion was incurred for the reason that the merchandise was covered by fraudulent

invoices and entries." The letter further advised the petitioner of its right to apply for relief to the Commissioner of Customs under the provisions of section 618 of the Tariff Act of 1930. In about 2 weeks, the petitioner received another letter, dated February 15, 1951 (petitioner's exhibit 3), from the collector stating that the penalty of $122,017.61, hereinbefore referred to, was incurred because certain merchandise entered between and including the dates of December 3, 1948, and December 10, 1950, had been undervalued. Another letter, dated February 16, 1951 (petitioner's exhibit 4), transmitted by the collector's office, advised the petitioner that certain merchandise listed in the letter, and having a forfeiture value of $16,731.58, had become liable to forfeiture because—

* * * an investigation by the customs agency service of importations by you shipped by Yung Hua, Peking Arts & Handicrafts Union, Y. C. Li, and Yao Dian Fong, all of Peking, China, has disclosed fraudulent undervaluation by means of filing of false invoices with customs entries. The customs agency service states that evidence of this fraud upon the customs revenue is found in the fact that remittances by you to the above-mentioned shippers for importations from the shippers aggregate about twice as much as the aggregate dutiable value shown by the invoices for the same entries.

The petitioner thereupon instigated proceedings under section 618 to obtain relief from the forfeiture of the merchandise, valued at $16,731.58, and also for relief from a liability for forfeiture value of $122,017.61, and, on September 24, 1954, the collector's office advised the petitioner's attorney (petitioner's exhibit 5) that the "petitions filed by the Royal Cathay Trading Company for relief from the forfeiture of certain merchandise of a value of $16,731.58 and for relief from a liability for forfeiture value of $122,017.61 incurred under section 592, Tariff Act of 1930, as amended, in connection with 34 entries covering Chinese merchandise imported during the period from October 7, 1948, through September 25, 1950," had been considered by the Commissioner of Customs who had found that:

Under the circumstances the Bureau finds that mitigation of the forfeiture liability to a sum slightly in excess of the estimated loss of revenue is justified. Accordingly, under the authority of section 618 of the tariff act, the liability for forfeiture value is remitted and the forfeiture of the seized merchandise is remitted on the unconditional payment of $1,000 plus all expenses.

The collector further states that:

The offer of the importer to pay $1,000 in settlement of the Government's claims for forfeiture liability and liquidated damages is rejected. * * *

The liability for forfeiture value and the forfeiture of the merchandise were eventually remitted upon payment to the Government by the importer of $1,000. In the meantime, an appeal for reappraisement had been filed by the importer, the goods having been advanced over the invoiced and entered values by 100 per centum, plus 10 per centum, plus packing. This appeal was finally submitted on a stipulation (36 Cust. Ct. 553, Reap. Dec. 8569) in which the importer agreed to an advance of 50 per centum over the appraised value, apparently for the reason that the country in which the goods originated, to wit, Communist China, was closed to all transactions with the United States and obtaining evidence from that source was practically impossible. The petitioner was under the necessity of working out the most satisfactory stipulation possible under the circumstances. Additional duties, as required under the provisions of section 489, were thereupon imposed, and this petition for remission was filed.

In addition to the testimony hereinbefore reviewed, the record shows that the petitioner, in the petition filed with the Commissioner of Customs, made a full and complete disclosure of its records, showing the total amount of money forwarded to China, the value of the goods imported, the expenses which it incurred for salaries, commissions, and other services, together with a statement of the amount of cash remaining in China and the amount of goods owned by it and

remaining in China when relations between the United States and Communist China caused the United States Government to prohibit all dealings with China. The record further includes a complete copy of the petitioner's records (petitioner's exhibit 1), giving in detail all money sent to China by the petitioner during the full period of its dealings, with a statement of the value of the merchandise received, the sums expended for salaries and commissions, and outlays for cables and miscellaneous expenses, together with the merchandise and cash belonging to the importers on hand in China when dealings with the latter country were suspended by our Government. The record further shows that, at the time the 21 entries now under consideration by the court were appraised, 7 other entries covering merchandise imported at approximately the same time as the involved goods, were held in abeyance. The merchandise covered by the latter entries was eventually appraised at the entered values, although the merchandise involved was, in all cases, substantially the same as that before the court, and, in some cases, identical. Furthermore, Alfred G. Schrupp, the examiner of the merchandise involved, testified that, in his opinion, the entered value was adequate and that, while he did not recall specifically the entries before the court, he did recall being directed by his superior to recommend the increase in values shown in the appraisement. He further stated that merchandise of a similar kind and quality, entered at the same time, was appraised at substantially the amount of the entered values given by petitioner for the merchandise under consideration.

Petitioner's exhibit 6 shows in parallel columns prices for the 7 shipments referred to and prices for the 21 shipments in dispute. From this exhibit, it appears that the merchandise was similar in quality and value.

The record in this case clearly indicates that the investigation made by the customs agent relevant to the importations in question was at least hasty and inadequate and that the treatment accorded the petitioner really merges on persecution. The Government in the trial of this petition offered no evidence whatever. The evidence of the importer stands uncontroverted.

As in all petitions for remission, the only issue is whether the importer has discharged, by satisfactory evidence, the burdens imposed by section 489. As has been pointed out by our appellate court in the case of *B. K. Elliott Company* v. *United States*, 44 C. C. P. A. (Customs) 189, C. A. D. 659—

\* \* \* That, in turn requires consideration of the facts as they relate to what a reasonable and prudent person would be expected to do under the same or similar circumstances, but does not, as pointed out in the *Glendenning* case require proof beyond a reasonable doubt.

In the case of *Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320, the appellate court set forth a statement of principles applicable in cases of this sort, which statement was incorporated in the opinion of the court in the *B. K. Elliott Company*, case, *supra*:

We have had occasion in several instances to review the judgments of the Board of General Appraisers in remission cases since the approval of the Tariff Act of 1922. *Each case has presented a state of facts peculiar to itself and it has, therefore, been necessary to dispose of each according to the ultimate conclusion arrived at after a consideration of them.* To announce general principles applicable to all such cases is difficult and in some respects impossible. But we have said that the issue principally involved in such cases is the good faith and intentions of the importer. *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440. If an importer has no information and knows of nothing which would raise a doubt in the mind of a *reasonable and prudent man* as to the correctness of the market value of purchased goods as stated by him, then the price paid for them in the ordinary course of business may be accepted by him as their true market value. *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205. If, however, he represents his goods to have a certain value and has at the time no reasonable grounds for believing his statements to be true, or if his representations are made

with reckless disregard of their truthfulness, or if there are circumstances which would put *a reasonable and prudent man* on inquiry, and he makes no such inquiry, then the importer has not sustained the burden placed upon him by the statute. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

\*  \*  \*  \*  \*  \*  \*

But it is argued by the Government that a remission can not be ordered except upon satisfactory evidence and that satisfactory evidence is evidence that convinces the mind beyond a reasonable doubt. We are aware that courts have in some instances attached such a meaning to the term "satisfactory evidence." We have not, however, followed these holdings in remission cases. In *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, we thus defined "satisfactory evidence":

> Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient. [Italics quoted.]

We are finally confronted then with the question as to whether the explanations made by the importer, as shown by the record, are such that they indicate a reasonable and prudent person would act similarly under similar circumstances. We believe that the importer has satisfactorily discharged its burden of proof and has made explanations which should satisfy a reasonable person. The test is not that which would be applied to a skilled customs expert, but that which should govern the actions of a good and competent businessman. There is no actual proof in the record of the cost of the goods to the importer other than the financial records produced by the petitioner, nor is there anything in the record to challenge the correctness of the firm's books of account indicating that, during the years involved, the total cost of the goods received from China by the importer, based on the actual invoices, was $50,332.98; that the petitioner paid salaries to its agents in the sum of $2,400 between January 1949 and December 31, 1950; commissions in the sum of $3,275.79 between July 30, 1948, and November 19, 1950; and miscellaneous expenses of $2,435.62 between July 30, 1948, and November 15, 1950, making a total outlay of $58,444.39; that when business relations between citizens of the United States and China were suspended, the petitioner had merchandise on hand in China, belonging to it, valued at $6,457.43, and cash in that country, totaling $7,050.38 (R. 78); and that the foregoing computations account for all money sent by the petitioner to China during the period involved. Nor is there any explanation in the record, other than that given by the petitioner, for the fact that 7 items not here involved, but covering merchandise of similar quality, were appraised at values approximately the same as the invoiced and entered values of the involved merchandise. Furthermore, the testimony of Mr. Schrupp, the only Government representative evidently who examined the merchandise, is to the effect that the entered values were adequate (R. 66).

We, therefore, find that it satisfactorily appears from the record before us that "the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise." We, accordingly, find that the petition should be granted. Judgment will be entered accordingly.