BEFORE THE SECOND DIVISION, DECEMBER 9, 1958

No. 62561.—William G. McBeth v. United States, petition 7215–R (New Orleans).

RAO, Judge: This is a petition for the remission of additional duties assessed against certain imported merchandise pursuant to the provisions of section 489

of the Tariff Act of 1930, as effective prior to the repeal of the first and second paragraphs thereof by the Customs Simplification Act of 1953. Insofar as here pertinent, said section 489 provides as follows:

SEC. 489. ADDITIONAL DUTIES.

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

The particular items of merchandise to which the provisions of said section 489 were applied, together with the details of their respective entered and appraised values, are herein set forth as follows:

| Item | Entered value | Appraised value |
|---|---|---|
| 10 mah jong sets | $3.00 per set | $10.00 per set. |
| 2 prs. figurines (elephant) | $1.50 per pair | $7.00 per pair. |
| 1 pr. figurines (lion) | $1.50 per pair | $7.00 per pair. |
| 1 pr. figurines (dragon) | $2.00 per pair | $8.00 per pair. |
| 30 jewel boxes | $1.70 each | $4.00 each. |

In reappraisement proceedings instituted by petitioner, the appraised values were sustained upon the theory that the evidence adduced in his behalf was insufficient to overcome the presumptively correct values returned by the appraiser (*William G. McBeth* v. *United States*, 28 Cust. Ct. 650, Reap. Dec. 8114, affirmed 34 Cust. Ct. 551, A. R. D. 58). Accordingly, the additional duties here complained of were assessed against the aforementioned items.

Exactly which statutory basis was adopted by the appraiser in his return of the items here involved is not recorded in any of the proceedings taken in connection with the instant importation. It is apparent, however, that the excess of the appraised values over that declared in the entry is considerably more than 100 per centum, and, therefore, by statutory mandate, the instant entry was presumptively fraudulent. While, under such circumstances, the right to remission of additional duties is not denied to an importer, his burden of establishing that the undervaluation of his merchandise was not inconsistent with

good faith is necessarily a heavy one. He must affirmatively show that in relying upon his entered values he was "without intention to defraud the revenue or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value." *Stan Newcomb and Barbara Todd* v. *United States,* 37 C. C. P. A. (Customs) 18, C. A. D. 413.

Petitioner alleges that such is the case with respect to the instant entry. He asserts that the values upon which he relied were the prices he actually paid for the merchandise at bar, and that such or similar merchandise was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade at substantially the same prices.

It appears from the evidence, which petitioner himself gave, that he personally purchased the instant merchandise in Shanghai and Hong Kong, China, at a time when he traveled to those ports as a merchant seaman. Having in mind the intention of ultimately conducting a business in oriental goods, prior to his departure on that particular voyage, petitioner consulted a customs broker about proper procedures for ascertaining the values of anything he might purchase. Accordingly, when he visited Hong Kong and Shanghai, he first obtained from the American consul a list of reputable dealers of the merchandise in which he was interested. He then retained a Chinese interpreter and "exhausted the entire list of available jobbers" comparing prices before he made any purchases. His method of operation was to have the interpreter price the items he wanted to buy, and, if he felt the quotation was satisfactory, he would attempt to consummate the purchase. However, due to a growing prejudice against Occidentals, fostered by Communist propaganda, the dealers invariably increased the prices previously quoted to the Chinese interpreter when it became apparent that an American was in fact the purchaser. For this reason, petitioner was convinced that the prices he eventually paid were higher than the prevailing export prices.

Petitioner further testified that these were over-the-counter quotations which did not include packing charges; that there were no restrictions accompanying any of the sales; and that he did not pay any other or additional remuneration to any of these merchants. He used the actual purchase prices in making the entry and did not have any reason to believe that he should have entered at higher values. Neither did he intend in any way to deceive the appraiser about the dutiable values, or to conceal or misrepresent any facts, or to defraud the revenue of the United States.

On cross-examination, petitioner testified that, in going from shop to shop, he was endeavoring to find the average prevailing wholesale prices, rather than to look for bargains. He reiterated that before he made any purchases, "I grounded myself on not only what the wholesale prices were, but also what the wholesale quantities were." He found very little variation in quotations, not more than a few cents one way or the other; what variations there were were occasioned primarily by fluctuations in the conversion rates from Hong Kong pounds to United States dollars. He made his selection on the basis of designs, but the prices he paid were a fair average of all the quotations for the usual wholesale quantities of the respective items, to wit, $3 each per dozen for mah jong sets; $1.50 per pair per half dozen for the elephant and lion figurines; $2 per pair per half dozen for the Chinese dragons; and $1.70 each per 100 for the jewel boxes.

Petitioner further stated that he had imported merchandise from the same ports the previous year, and, because he was warned not to import any more of those items, owing to difficulties in ascertaining their values, he took precautions to get the proper wholesale selling prices for the merchandise at bar.

It would appear from the foregoing recital of the circumstances surrounding the instant entry that, from his own investigations of prevailing prices, petitioner had no reason to believe that the prices he paid did not truly reflect the market value

of his merchandise.   He had, it is true, been put on notice of the difficulties attendant upon ascertaining the values of these classes of articles by his admitted troubles in connection with his first importation.   But it would seem that he took all reasonable precautions to avoid a recurrence.   Before leaving the United States, he consulted a customs broker for the purpose of informing himself of what facts were essential to a proper entry.   Armed with that knowledge, he sought information as to competitive prices and wholesale quantities from the entire list of available jobbers in the places of purchase.   When he found little if any variation from the prices he paid, he became convinced that his prices were indeed representative of the freely offered prices to all purchasers.

In the recent case of *B. K. Elliott Company* v. *United States*, 44 C. C. P. A. (Customs) 189, C. A. D. 659, our appellate court quoted with approval the following statement of some of the principles involved in remission cases from *Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, 389, T. D. 41320:

We have had occasion in several instances to review the judgments of the Board of General Appraisers in remission cases since the approval of the Tariff Act of 1922.   Each case has presented a state of facts peculiar to itself and it has, therefore, been necessary to dispose of each according to the ultimate conclusion arrived at after a consideration of them.   To announce general principles applicable to all such cases is difficult and in some respects impossible.   But we have said that the issue principally involved in such cases is the good faith and intentions of the importer.   *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440.   If an importer has no information and knows of nothing which would raise a doubt in the mind of a reasonable and prudent man as to the correctness of the market value of purchased goods as stated by him, then the price paid for them in the ordinary course of business may be accepted by him as their true market value.   *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205.   If, however, he represents his goods to have a certain value and has at the time no reasonable grounds for believing his statements to be true, or if his representations are made with reckless disregard of their truthfulness, or if there are circumstances which would put a reasonable and prudent man on inquiry, and he makes no such inquiry, then the importer has not sustained the burden placed upon him by the statute.   *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

The court then observed:

The sole issue here, as in all remission cases, is whether the importer has discharged, by satisfactory evidence, the burdens imposed by section 489.   That, in turn, requires consideration of the facts as they relate to what a reasonable and prudent person would be expected to do under the same or similar circumstances, but does not, as pointed out in the *Glendenning* case, require proof beyond a reasonable doubt.

From the record before us, we cannot characterize the actions of petitioner as anything less than prudent.   He made every effort within his understanding to comply with what he believed to be the requirements for entering his goods at their proper values, and his own investigations of competitive market conditions did not cause any suspicion that the values he adopted were inadequate. That he lacked the essentials of proof to sustain his faith in the accuracy of the entered values for reappraisement purposes should not be held against him here, where no fact is brought to light to cast doubt upon his integrity and good intentions.

Based upon the foregoing considerations, we are convinced that the entry of the instant items of imported merchandise at values less than those returned upon final appraisement was without any intention to deceive the appraiser as to the value of the merchandise, or to conceal or misrepresent any facts in the case, or to defraud the revenue of the United States.   The instant petition for remission is granted.

Judgment will be entered accordingly.