BEFORE THE SECOND DIVISION, DECEMBER 12, 1958

**No. 62593.**—S. J. Charia & Co. *v.* United States, petition 7209–R (New Orleans).

RAO, Judge:   This is a petition for the remission of additional duties assessed, pursuant to the provisions of section 489 of the Tariff Act of 1930, prior to its revision by the Customs Simplification Act of 1953, by reason of undervaluation upon entry of two importations of silk scarves from Italy.   Said section 489, insofar as here pertinent, provides as follows:

* * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

It appears from the official papers that the merchandise covered by entry number 1758 was invoiced at $0.265 each, entered at 165 lira each, plus 2 percent tax, plus packing, and appraised at $0.30 each, net, packed; and that the scarves involved in entry number 2670 were invoiced at $0.26 each, entered as invoiced and appraised at $0.30 each, net, packed.

Stephen J. Charia, the owner of S. J. Charia & Co., petitioner herein, was the only witness to testify in these proceedings.   He stated that he had personally negotiated the purchase of both subject shipments and arranged for their importation into this country.

He explained that before he made the first purchase, he requested the exporter, Ditta Giovanni Bianchi, to submit samples and price quotations for the particular type of scarf he desired.   He also received two or three offers from other suppliers of the same type of merchandise.   Ditta Bianchi's price was originally 27 cents but was reduced one-half cent "in consideration of banking expenses," to wit, 26½ cents, if paid by sight draft in New Orleans, or 26 cents, if paid by irrevocable letter of credit in Italy.   At least one other supplier quoted 22 or 23 cents per scarf.   He decided to buy from Ditta Bianchi because of better workmanship in the hand-rolled edges, and superior rating and standing in international transactions; and, inasmuch as he preferred to pay for the merchandise after arrival in the United States, he chose to execute a sight draft, thus making the price 26½ cents per scarf.

Accordingly, in the belief that the price paid represented the freely offered price to all purchasers both for domestic consumption in Italy and for exportation, the witness entered the first shipment at the price paid, the entry value of 165 lira, plus 2 percent, plus packing, being the equivalent of 26½ cents, plus 2 percent, plus packing.   He had no reason to believe that higher prices should be adopted.

Before negotiating the second shipment, the witness attempted to obtain a better price for the scarves based upon at least one offer at 22 cents each.   An exchange of cables resulted, petitioner offering first 24 cents, then 25 cents, for the same quality scarf.   The shipper refused to reduce the price below a minimum of 26 cents per scarf, and the transaction was concluded at that figure.

Concerning efforts to determine the prevailing prices in Italy for this type of merchandise, Charia testified:

Naturally, whenever I was ready to place order for this type merchandise, I was in contact by cable or letter with different suppliers, and upon receipt of samples, I would compare the quality, workmanship, and hand-rolled edges, and in respect to the reputation and business standing of supplier. As far as I know, I did not accept two or three transactions from supplier of 3 or 4 cent lower price because I had information that he would not give me quality and workmanship as requested.

The witness further stated that he could not find any element to justify the appraiser's advance to 30 cents per item and, therefore, filed appeals to reappraisement. Although the appeals were subsequently abandoned because too costly to pursue, the witness was steadfast in his belief that his entered values were correct. Charia also testified that, in entering his merchandise as he did, he did not intend to deceive the appraiser as to the value of the merchandise, or to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case.

On cross-examination, testimony was elicited to the effect that petitioner made purchases of silk scarves more or less every month. Charia could not recall higher prices at the time of the instant shipments, but admitted that 1 month later he had to pay 29 cents. As to the second of the instant shipments, he stated that he felt he had the right to bargain for a lower price, in view of the fact that he could have purchased the same or comparable merchandise at 22 cents each. When the supplier insisted upon 26 cents, he paid that price rather than take a chance on the credit and business standing of the competitor.

In support of the instant application for remission of the additional duties herein assessed, counsel for petitioner relies upon Charia's continuing belief in the validity of his entered values as representative of current prices and the alleged fact that this is an instance of a legitimate dispute with the appraiser as to proper values.

Counsel for the Government asserts that the record is devoid of satisfactory evidence of lack of intention to defraud the revenues of the United States or misrepresent the facts as to value, pointing particularly to petitioner's entry of merchandise at 26½ cents and 26 cents, respectively, notwithstanding a price quotation at 27 cents, and to the fact, acknowledged by the witness, that prices were rising.

It does not seem that either of these circumstances necessarily implies a lack of good faith on the part of this petitioner. It has been held that an entrant of imported merchandise is not an insurer of the correctness of the values submitted by him. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250. He is not required to positively sustain those values. What is demanded of him is that he shall not knowingly make entry at values which he either does not believe to be proper or has no reason to believe are proper. *Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387, T. D. 41320. As stated in *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205:

* * * If an importer has no information and knows of no circumstance or circumstances which would raise a reasonable doubt in the mind of a prudent business man as to the true market value of purchased goods, the price paid for them in the ordinary course of trade in a free open market may well be accepted by him as their market value.

If, however, there are any facts or circumstances known to a petitioner which would cause him as a reasonable and prudent businessman to doubt the correctness of his representations, he is chargeable as lacking in good faith if he does not investigate those facts and resolve his doubts prior to making entry. *Wolf*

*& Co.* v. *United States,* 13 Ct. Cust. Appls. 589, T. D. 41453, *Glendenning, McLeish & Co. (Inc.)* v. *United States, supra.*

Here, it affirmatively appears that petitioner negotiated for its purchases on the open market, asking for, and receiving quotations from, various suppliers of the goods it desired. The witness made his selection upon the basis of the superior workmanship and credit standing of one particular exporter, and had no reason to believe that higher prices were being charged for the same kind of merchandise.

We are inclined to the view that it was neither carelessness nor indifference to a true approximation of the values of the instant scarves which prompted petitioner to enter the first shipment at one-half cent less than the initially quoted price. The explanation that the differential was a banking charge, allowance for which was passed on to petitioner, does not strike a note inconsistent with standards of reason and prudence, especially when it is observed that the reduction depended upon terms of payment. It is also clear that the second shipment was entered at a price reached by open negotiations; after the receipt of lower price quotations from others.

Neither is there significance in the fact that a subsequent purchase order was confirmed at 29 cents per scarf. Assuredly, petitioner was not chargeable with knowledge of higher prices which became effective not alone after the merchandise was exported but, as well, after both of the instant entries were made. In any event, a price change subsequent to the date of exportation is seemingly irrelevant to the statutory value of imported merchandise. *United States* v. *Robert Reiner, Inc.,* 35 C. C. P. A. (Customs) 50, C. A. D. 370.

Based upon the foregoing considerations, we are satisfied that the entries of the merchandise at bar, at values less than those returned upon final appraisement, was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. The instant petition for remission is, therefore, granted.

Judgment will be entered accordingly.